**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KCB:SHP
F. #2026R00583

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 27, 2026

By E-mail and ECF

The Honorable Joseph A. Marutollo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Francesco Prainito
Criminal Docket No. 26-253 (LDH)

Dear Judge Marutollo:

The government respectfully submits this letter in support of its application for the entry of an order of pretrial detention for defendant Francesco Prainito. As set forth in more detail below, the defendant, a citizen of Italy, has been charged with illegally reentering the United States following his removal in 2006. The defendant's removal was ordered because he was convicted of assault in the first degree in New York state court, which is an aggravated felony under immigration law. Given the nature of the charged conduct as well as the defendant's history and characteristics, the defendant is both a danger to the community and poses a significant risk of flight. He should be detained pending trial.

## I. Background

### A. Assault Conviction and Removal

On or about July 15, 2002, the defendant pleaded guilty to one count of First Degree Assault: Intent to Cause Serious Injury with a Weapon, a felony in violation of New York Penal Law ("NYPL") § 120.10(1). His conviction stemmed from a violent incident in which Prainito assaulted a man (the "Victim") in June 2000. According to the Pre-Sentence Investigation report prepared in state court, Prainito and a co-conspirator, who were hiding in bushes, ambushed the Victim as he exited his vehicle. Prainito struck the Victim multiple times with a baseball bat, as the Victim told his 12-year-old son, who initially remained in the vehicle, to get help. Prainito and his co-conspirator subsequently dragged the Victim back into his vehicle, which the Victim's son apparently fled, and drove the Victim around for approximately 45 minutes before dropping the Victim, who was at this point unconscious, on the ground outside Long Island Jewish Hospital. The Victim sustained a broken right light leg, broken left kneecap,

multiple broken ribs, a fractured sternum, a collapsed lung, a fractured cranium, and multiple bruises and contusions throughout his body. The Victim spent three days in an intensive care unit followed by an additional week in the hospital before being discharged. According to the state Pre-Sentence Investigation report, at the time of the assault, the Victim ran a car business that was in financial distress. Prainito allegedly provided a loan to the business, which the Victim believed to be the motivation behind the attack.

Following his guilty plea, on September 4, 2022, Prainito was sentenced in Queens County Supreme Court to a determinate term of five years in prison. While serving his term of custody, the United States Department of Homeland Security ("DHS") commenced removal proceedings against the defendant pursuant to Section 240 of the Immigration and Nationality Act ("INA" or the "Act"). Specifically, DHS determined that the defendant: (1) was not a citizen or national of the United States; (2) was a native of Italy and a citizen of Italy; (3) was admitted to the United States on September 27, 1986, as a lawful permanent resident; (4) was convicted of First Degree Assault under New York state law; and (5) was sentenced to a term of imprisonment of at least one year. On or about March 4, 2005, an immigration judge in Napanoch, New York, ordered the defendant's removal from the United States. In accordance with the provisions of Section 212(a)(9) of the INA, the defendant was issued a "Warning to Alien Ordered Removed or Deported" (Form I-294). This document noted that the defendant was prohibited from entering, or attempting to enter, or being in the United States "[a]t any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony," i.e., the assault conviction noted above.

On or about November 27, 2006, officials with the United States Immigrations and Customs Enforcement ("ICE") deported the defendant to Italy. A "Warrant of Removal/Deportation" (Form I-205) confirms that he was removed on a flight from Newark International Airport. The form contains the defendant's picture, signature, and right index fingerprint.

B. Subsequent Traffic Stop in New York

On or about May 17, 2021, the defendant was driving a commercial dump truck registered to a concrete company ("Company 1") when he was selected for inspection at a transfer station by inspectors from the New York City Business Integrity Commission ("BIC"). Upon being approached by inspectors, the defendant presented the inspectors with the vehicle's registration, as well as a Canadian driver's license in the name of "Frank Piranito," a misspelling of the defendant's true last name. Company 1 was ultimately issued a citation following the inspection because the defendant was not licensed to haul waste for Company 1. A photograph of the driver's license taken by BIC inspectors is below:




In the course of the investigation into the defendant's illegal re-entry to the United States, law enforcement queried the National Law Enforcement Telecommunications System, which maintains records of all issued Canadian provincial identity documents for the license number and name and date of birth on the document above. No record was found for the license number or biographical information. Furthermore, the driver's license appears to be fraudulent based on several discrepancies as compared to an authentic Canadian driver's license. First, the formatting of the driver's license number in the above document starts with a "G," but all Ontario driver's license numbers begin with the first initial of the license holder's last name. Second, the last six digits, "781008" in the above, should correspond with the license holder's date of birth, which they do not. Finally, the logo next to Ontario in the upper left of the above document is that of a logo that was discontinued for use in Ontario driver's licenses in 2006, even though the above document lists an issue date of March 25, 2015.

The image present on the above driver's license was previously used by the defendant in connection with a 2011 application for an immigrant visa to the United States, which was denied in light of the defendant's prior removal and lifetime re-entry bar. A copy of the image submitted alongside the 2011 immigrant visa application is below:



C. Observation in Queens and Arrest

Law enforcement received information that the defendant had illegally returned to the United States and was residing in Queens, New York, in or around June 2026. After learning that the defendant was in the United States, law enforcement conducted surveillance of the defendant's suspected residence, where he was observed on multiple occasions in July 2026. A grand jury sitting in this District subsequently indicted the defendant for illegally re-entering the United States on or about August 25, 2026, and he was arrested at his suspected residence earlier today. The defendant was in his possession of the fake Canadian driver's license described above at the time of his arrest, and in a post-arrest statement, he admitted to re-entering the United States through Mexico approximately nine years ago.

II. Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer. Ferranti, 66 F.3d at 541; see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing).

## III. The Defendant Should be Detained Pending Trial

For the reasons described above and below, the government has met its burden of establishing dangerousness and risk of flight sufficient to require the defendant's continued detention pending trial. No condition or combination of conditions will ensure the defendant's appearance before the Court and the safety of the community.

First, the nature and circumstances of the offense show that pretrial detention is appropriate. As charged in the Indictment, the defendant illegally reentered the United States after being convicted and sentenced for First Degree Assault, in violation of NYPL § 120.10, an aggravated felony under the INA. In connection with the immigration judge's March 2005 order that the defendant be removed from the United States, the defendant was issued a form explicitly noting that the defendant was prohibited from entering, or attempting to enter, or being in the United States "[a]t any time" because of his removal and his conviction for an aggravated felony. The fact that the defendant was found in the United States following his removal indicates a blatant disregard for the law and the orders of the courts in this country.

Second, the history and characteristics of the defendant similarly weigh in favor of detention. The defendant was originally deported because he violently assaulted a man in front of the man's 12-year-old son in what appears to have been an attempt to collect a loan. The defendant's extreme conduct demonstrates the danger that he poses to the community if released on these charges.

Third, the defendant poses a significant risk of flight if released. The fact that he has illegally reentered the United States and presumably lived here for years indicates that, were he to flee the jurisdiction to avoid prosecution and a prison term, he could do so without detection. This is underscored by the fact that the defendant previously presented a fraudulent foreign identification document to law enforcement authorities in 2021, illustrating that the defendant has access to fake travel documents and/or those who can obtain them.

Finally, the evidence of the defendant's guilt is overwhelming. Proof at trial will consist of records from ICE documenting the defendant's 2005 order of removal and his aggravated felony conviction. ICE records would also show that the defendant was never given permission to re-enter the country. The defendant's presence in the United States following his prior deportation is easily proven by the testimony of any of the law enforcement officers involved in his arrest in this case. In addition, the defendant admitted in his post-arrest statement that he re-entered the country through Mexico.

The strength of the evidence against the defendant further incentivizes him to flee to avoid prosecution that will likely result in a prison sentence and his deportation back to Italy. See Millan, 4 F.3d at 1046 (holding that, where the evidence of guilt is strong, it provides "a considerable additional incentive to flee"); see also United States v. Mercedes, 254 F.3d 433, 438 (2d Cir. 2001) (ordering pretrial detention and reversing the district court's grant of release where the defendant was not a United States citizen, faced a substantial sentence, and significant evidence linked him to a violent robbery).

IV. Conclusion

For the reasons set forth above, the government requests that the defendant be detained pending trial.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Stephen H. Petraeus
Stephen H. Petraeus
Assistant U.S. Attorney
(718) 254-6352

cc: Clerk of Court (JAM) (by E-mail)
Counsel of Record (by E-mail)